| Fill in this information to identify the case: | | |
|---|---|---|
| **Debtor 1** | **Eric A Kelley** | |
| **Debtor 2** (Spouse, if filing) | **Jessica L Kelley** | |
| United States Bankruptcy Court for the : **Northern** | **District of** | **Alabama** (State) |
| **Case number** | 18-80085-CRJ13 | |

Official Form 410S1

# Notice of Mortgage Payment Change         12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

| **Name of creditor:** | Home Point Financial Services | **Court claim no.** (if known): | 17 |
|---|---|---|---|
| **Last four digits** of any number you use to identify the debtors' account: | XXXXXX8805 | **Date of payment change:** Must be at least 21 days after date of this notice | 6/1/2019* |
| | | **New total payment:** Principal, interest, and escrow, if any | $1,070.89* |

**Part 1: Escrow Account Payment Adjustment**

1. **Will there be a change in the debtors' escrow account payment?**

   ☒ No
   ☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____
   _____

   **Current escrow payment:** $ _____                **New escrow payment :** $ _____

**Part 2: Mortgage Payment Adjustment**

2. **Will the debtors' principal and interest payment change based on an adjustment to the interest rate in the debtors' variable-rate note?**

   ☒ No
   ☐ Yes Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

   **Current interest rate:**       %                **New interest rate:**       %
   **Current principal and interest payment:** $ _____     **New principal and interest payment:** $ _____

**Part 3: Other Payment Change**

3. **Will there be a change in the debtors' mortgage payment for a reason not listed above?**

   ☐ No
   ☒ Yes Attach a copy of any documents describing the basis for the change, such as repayment plan or loan modification agreement.
   *(Court approval may be required before the payment change can take effect.)*

   Reason for change: Mortgage Payment Change due to Loan Modification

   | **Current Interest Rate:** | 4.500% | **New Interest Rate:** | 5.250% |
   |---|---|---|---|
   | **Current Principal & Interest:** | $ 879.88 | **New Principal & Interest:** | $ 921.84 |
   | **Current Escrow Payment:** | $ 143.41 | **New Escrow Payment:** | $ 149.05 |
   | **Current mortgage payment:** | $ 1,023.29 | **New mortgage payment:** | $ 1,070.89 |

## Part 4: Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor.

❋ I am the creditor's authorized agent

**I declare under penalty of perjury that the information provided in this Notice is true and correct to the best of my knowledge, information, and reasonable belief.**

X  /s/Karen A. Maxcy                                      Date  8/30/2019
   Signature

| Print: | Karen | A. | Maxcy | Title | Authorized Agent |
|        | First Name | Middle Name | Last Name | | |

Company    McCalla Raymer Leibert Pierce, LLC

Address    1544 Old Alabama Road
           Number    Street
           Roswell              GA              30076
           City                 State           ZIP Code

Contact phone   678-321-6965                               Email   Karen.Maxcy@mccalla.com

* Pursuant to the terms of the loan modification, this PCN is being filed to reflect the P&I amount of $921.84 and Escrow payment of $149.05, effective June 1, 2019. To the extent any prior interest rate adjustments under the terms of the loan documents or prior escrow adjustments were not noticed in this Court pursuant to Bankruptcy Rule 3002.1 after December 1, 2011 or the Petition Date (whichever is later), creditor will refund or credit the debtor, as appropriate, to give the debtor the benefit of any lower payment amount as provided under the loan documents, escrow analysis, or a notice previously filed with this Court pursuant to Bankruptcy Rule 3002.1. This does not constitute a modification of the payment obligations under the terms of the promissory note, mortgage, or other loan documents.

|  | Bankruptcy Case No.: 18-80085-CRJ13 |
|---|---|
| In Re: | Chapter: 13 |
| Eric A Kelley | Judge: Clifton R. Jessup Jr. |
| Jessica L Kelley | |

## CERTIFICATE OF SERVICE

I, Karen A. Maxcy, of McCalla Raymer Leibert Pierce, LLC, 1544 Old Alabama Road, Roswell, GA 30076, certify:

That I am, and at all times hereinafter mentioned, was more than 18 years of age;

That on the date below, I caused to be served a copy of the within NOTICE OF MORTGAGE PAYMENT CHANGE filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, with proper postage affixed, unless another manner of service is expressly indicated:

Eric A Kelley
27925 Phillip Wagon Drive
Athens, AL 35613

Jessica L Kelley
27925 Phillip Wagon Drive
Athens, AL 35613

Stephen Gale Campbell                                  *(served via ECF at sgcampbelllaw@aol.com)*
Stephen G. Campbell, P.C.
105 South Marion Street
Post Office Box 708
Athens, AL 35612

Michele T. Hatcher, Trustee                            *(served via ECF at ecf@ch13decatur.com)*
P.O. Box 2388
Decatur, AL 35602

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:   9/3/2019         By:   */s/Karen A. Maxcy*
                  (date)                Karen A. Maxcy
                                        Authorized Agent for Home Point Financial Services

Source of Title
Deed Book 2014
Page 37676
Instrument No. N/A

| After Recording Return To: | This Document Prepared By: |
|---|---|
| RUTH RUHL, P.C. | Ruth Ruhl, Esquire |
| Attn: Recording Department | RUTH RUHL, P.C. |
| 12700 Park Central Drive, Suite 850 | 12700 Park Central Drive, Suite 850 |
| Dallas, Texas 75251 | Dallas, Texas 75251 |

_____[Space Above This Line For Recording Data]_____

Loan No.: ▓▓▓▓▓
Investor Loan No. ▓▓▓▓▓

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 25th day of April, 2019, between ERIC KELLEY and JESSICA KELLEY, JOINT TENANTS

("Borrower")
and Home Point Financial Corporation, whose address is 11511 Luna Road, Suite 200, Farmers Branch, Texas 75234

("Lender"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated August 25th, 2014, recorded August 26th, 2014, and recorded in Mortgage Book 2014, Page 37678, Instrument No. N/A, of the Official Records of LIMESTONE County, Alabama, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at 27925 PHILLIP WAGNON DR., ATHENS, Alabama 35613,

"The original loan amount was $ 173,655.00 and the Unpaid Principal Balance is $166,938.11. The portion of the Unpaid Principal Balance which is subject to mortgage registry tax is $166,938.11."

Reason for Modification: Maturity Date Extension

ALABAMA LOAN MODIFICATION AGREEMENT  Page 1 of 6
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Loan No.: 

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of June 1st, 2019, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 166,938.11, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate 5.250 %, from May 1st, 2019. Borrower promises to make monthly payments of principal and interest of U.S. $ 921.84, beginning on the 1st day of June, 2019, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 5.250 % will remain in effect until principal and interest are paid in full. If on May 1st, 2049, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:
    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

Loan No.: ▓▓▓▓▓▓

      (b)     all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

    5.     Borrower understands and agrees that:

      (a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

      (b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

      (c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

      (d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

      (e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

      (f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

    6.     If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

Loan No. ███

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph.

Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Loan No.: ███████

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

_____5/1/19_____     _____[signature]_____(Seal)
Date                                                                     ERIC KELLEY                                       –Borrower

_____5-1-19_____     _____[signature]_____(Seal)
Date                                                                     JESSICA KELLEY                                   –Borrower

_____     _____(Seal)
Date                                                                                                                                 –Borrower

_____     _____(Seal)
Date                                                                                                                                 –Borrower

## BORROWER ACKNOWLEDGMENT

State of __Alabama__ §
County of __Madison__ §
                              §

I, _____April Goosby_____, a Notary Public *[name and style of officer]*, hereby certify that ERIC KELLEY and JESSICA KELLEY

whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date.

Given under my hand this __1st__ day of __May__, A.D. __2019__

(Seal)

_____[signature]_____
Ex: 4-19-20    Notary Signature

Notary Public
Style of Officer

ACKNOWLEDGMENT (ALABAMA)                                                                                       Page 5 of 6

Case 18-80085-CRJ13    Doc    Filed 09/03/19    Entered 09/03/19 15:54:04    Desc Main
Document    Page 8 of 16

Loan No.: ███

Home Point Financial Corporation  
—Lender

5/2/19  
-Date

By: /s/ Stephen Gabbard  
Stephen Gabbard  
Its: Sr. Director

## LENDER ACKNOWLEDGMENT

State of Texas §  
§  
County of Dallas §

I, Yesica Trejo, a Notary Public in and for said County in said State, hereby certify that Stephen Gabbard whose name as Sr. Director of Home Point Financial Corporation is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she, as such officer and with full authority, executed the same voluntarily for and as the act of said entity.

Given under my hand this the 2 day of May, 2019.

(Seal)

YESICA TREJO  
Notary Public, State of Texas  
Comm. Expires 04-04-2022  
Notary ID 131517081

/s/ Yesica Trejo  
Notary Signature

Notary Public  
Style of Officer

Loan No.: 

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____ -Borrower     _____ -Borrower
ERIC KELLEY                              JESSICA KELLEY

_____ -Borrower     _____ -Borrower

NOTICE OF NO ORAL AGREEMENTS (MULTISTATE)                               Page 1 of 1

Loan No.: ▮▮▮▮▮▮▮

# CORRECTION AGREEMENT

**Borrower(s):** ERIC KELLEY and JESSICA KELLEY     **Property:** 27925 PHILLIP WAGNON DR., ATHENS, Alabama 35613

**Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.**

"Borrower" **is** ERIC KELLEY and JESSICA KELLEY.

"Lender" **is** Home Point Financial Corporation
, and its successors or assigns.
"Loan" means the debt evidenced by the Note and all sums due under the Security Instrument.
"Note" means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
"Security Instrument" means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: **In consideration of the Loan Modification Agreement offered by Lender in the amount of $166,938.11 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree to comply with Lender's request to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.**

REQUEST BY LENDER: Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be <u>prima</u> <u>facie</u> evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

BORROWER LIABILITY: If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

ACKNOWLEDGMENT OF RECEIPT

**I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.**

_____ 5/1/19    _____ 5-1-19
ERIC KELLEY         -Borrower (Date)   JESSICA KELLEY        -Borrower (Date)


_____          _____
                    -Borrower (Date)                      -Borrower (Date)

Loan No.: 

# ATTORNEY SELECTION NOTICE

    By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

SELLER:　　　　　　　　　　　　　　　　　　　BORROWER:

N/A Modification _____　　　_Eric Kelley_____ _8/1/1__
　　　　　　　　　　　　　　　(Date)　　　　　ERIC KELLEY　　　　　　　　(Date)

N/A Modification _____　　　_Jessica Kelley_____ _5/1/19__
　　　　　　　　　　　　　　　(Date)　　　　　JESSICA KELLEY　　　　　　(Date)

_____ (Date)　　　_____ (Date)

_____ (Date)　　　_____ (Date)

ATTORNEY SELECTION NOTICE -MULTISTATE　　　　　　　　　　　　　　　　Page 1 of 1

Loan No.: ███████

# LOAN MODIFICATION AGREEMENT
# BANKRUPTCY DISCLOSURE ADDENDUM

THIS LOAN MODIFICATION AGREEMENT BANKRUPTCY DISCLOSURE ADDENDUM is made this 25th day of April, 2019, and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement of the same date, given by the undersigned (the "Borrower") which modifies Borrower's Note and Security Instrument to Home Point Financial Corporation
(the "Lender")
and covers the Property located at:

27925 PHILLIP WAGNON DR., ATHENS, Alabama 35613
*[Property Address]*

In addition to the covenants and agreements made in the Loan Modification Agreement, the Borrower and Lender covenant and agree as follows:

1. **Borrower has filed for a Chapter 13 bankruptcy and, Lender's final approval of the Loan Modification Agreement is contingent upon approval of the Loan Modification Agreement by the bankruptcy court.**
2. Borrower will seek a discharge in a Chapter 13 bankruptcy proceeding **AFTER** the execution of Loan Modification Agreement;
3. Borrower understands and acknowledges that Borrower has had an opportunity to consult an attorney of Borrower's own choosing before Borrower executed the Loan Modification Agreement and this Loan Modification Agreement Bankruptcy Disclosure Addendum, and Borrower has either consulted with an attorney or has declined the opportunity to consult with an attorney.

Except as otherwise specifically provided in this Loan Modification Agreement Bankruptcy Disclosure Addendum, the terms of the Loan Modification Agreement will remain unchanged and in full effect.

_____  -Borrower          _____  -Borrower
ERIC KELLEY                                    JESSICA KELLEY

_____  -Borrower          _____  -Borrower

LOAN MODIFICATION AGREEMENT BANKRUPTCY DISCLOSURE ADDENDUM          Page 1 of 2
CHAPTER 13 ACTIVE BANKRUPTCY

Loan No.: ███

Home Point Financial Corporation
—Lender

5/2/19
-Date

By: */s/ H. Gill/*
Its: Stephen Gabbard
Sr. Director

---
LOAN MODIFICATION AGREEMENT BANKRUPTCY DISCLOSURE ADDENDUM  Page 2 of 2
CHAPTER 13 ACTIVE BANKRUPTCY

EXHIBIT A

Lot 25, according to the map or plat of survey of Briarwood Crossing Addition No. 2 as recorded in the Office of the Judge of Probate of Limestone County, Alabama in Plat Book H, Page 132.